UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEIL A. MCFARLAND,<br><br>    Plaintiff,<br><br> v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>    Defendant. | C20-1823 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on the parties' cross-motions for judgment under Federal Rule of Civil Procedure 52, or in the alternative, cross-motions for summary judgment under Federal Rule of Civil Procedure 56, docket nos. 16 and 24. This action concerns Defendant Unum Life Insurance Company of America's denial of Plaintiff Neil McFarland's application for long-term disability ("LTD") benefits. Having reviewed the Administrative Record ("AR") and all papers filed in support of, and in opposition to, the motions, the Court determines that oral argument is unnecessary and enters the following Order.

ORDER - 1

**Background**

    **1.**    **Plaintiff's Medical History**

Plaintiff is a 47-year-old medical doctor.  AR 0004.  In February 2014, Plaintiff started work as an urgent care physician with the University of Washington ("UW").  AR 0622.  Plaintiff primarily worked at UW's Eastside Specialty Clinic in Bellevue, WA, and was frequently asked to staff other locations within UW's urgent care system.  *Id.*  Plaintiff obtained LTD coverage effective March 1, 2017, issued to the Association of University Physicians d/b/a UW Physicians.  AR 0122–72.

Plaintiff reports that he developed daily headaches in early 2015 that he initially attributed to extensive time spent working on a computer.  AR 0622.  The symptoms gradually progressed to respiratory issues, heart palpitations, sinus pressure, and at one point, blurred vision.  *Id.*  Plaintiff noticed that the symptoms subsided when he left his work center.  *Id.*  On February 16, 2015, Plaintiff saw Dr. Delilah Strother to establish care.  AR 0922.  Plaintiff reported that he had recently experienced high blood pressure readings and some episodes of sudden nausea.  *Id.*  He also reported that he was experiencing overall fatigue after living in the Seattle area for approximately one year.  *Id.*  The following day, February 17, 2015, Plaintiff went to the emergency room after experiencing chest tightness.  AR 0740.  All tests performed in the emergency room (comprehensive metabolic panel, chest X-ray, electrocardiogram ("EKG"), and stress echocardiogram) returned normal findings, and the emergency room physician believed that Plaintiff's symptoms could be related to stress.  AR 0740–43.

On April 5, 2015, Plaintiff visited an urgent care center after experiencing upper respiratory symptoms and a period of lightheadedness. AR 0917. He reported sleep problems, a lack of motivation, and stress. *Id.* Plaintiff was diagnosed with Seasonal Affective Disorder ("SAD") and an upper respiratory infection, and was prescribed medication for his anxiety. AR 0918–19.

Plaintiff attended a follow-up appointment with Dr. Strother on April 15, 2015. AR 0914. During that appointment, Plaintiff reported that he continued to feel unwell and recently experienced chest pain at work. *Id.* Plaintiff believed that his symptoms were related to stress. *Id.*

On July 11, 2015, Plaintiff messaged Dr. Strother to report that he experienced a severe episode of nausea, dizziness, weakness, and inability to concentrate after he was exposed to chemicals at UW's Eastside urgent care. AR 0910. After speaking with a patient who was soaked in acetone, Plaintiff had to lie down in a back room for a few hours while another physician covered his shift. *Id.* Plaintiff stated that he had been bothered by chemical smells before, but not on this scale. *Id.* Dr. Strother recommended allergy testing to evaluate Plaintiff's chemical sensitivity and a psychiatric evaluation. *Id.* Plaintiff consulted with an allergist on July 20, 2015, where he tested positive for maple and equivocal for dust mite and cat hair. AR 0904–07.

On July 22, 2015, Plaintiff reported trouble focusing at work and frontal headaches. AR 0898. The treating physician noted that Plaintiff did not experience any cognitive deficit. *Id.* The physician ordered an MRI which returned normal results. AR 0891.

ORDER - 3

On July 27, 2015, Pacific Industrial Hygiene LLC ("PIH") started an indoor air quality ("IAQ") evaluation of UW's Eastside Specialty Clinic. AR 0975–92. During its evaluation, PIH collected air samples from Plaintiff's workstation. AR 0978–79. According to PIH's report, "[t]he indoor mold spore concentrations found were typical of well-maintained indoor environments and are representative of a very clean indoor environment." AR 0979. PIH also tested for volatile organic compounds ("VOCs"), finding that the "VOCs identified by sampling were all far below their respective regulated limits." AR 0986–87. Finally, PIH determined that Plaintiff was not over-exposed to carbon monoxide. AR 0984.

Plaintiff saw Dr. Strother again on August 12, 2015. AR 0891. During his visit, Plaintiff explained that he would like to pursue an exception stating he cannot work at UW's Eastside Specialty Clinic "due to chemically triggered symptoms." *Id.* He also reported that he went to the Philippines the week before and "did better" while he was there. *Id.* Dr. Strother referred Plaintiff to Occupational Medicine and drafted a letter excusing him from work at the Eastside Specialty Clinic. AR 0892. On September 14, 2015, Plaintiff attended an appointment with Dr. Debra Cherry at Harborview Medical Center's Occupational Medicine Clinic. AR 0955–57. Plaintiff reported that he did not experience symptoms at other clinics and that his symptoms completely resolved after he stopped covering shifts at the Eastside Specialty Clinic one month prior. AR 0955. Dr. Cherry opined that Plaintiff's symptoms were related to environmental workplace exposures on a "more probable than not basis." AR 0957. Dr. Cherry also noted that

ORDER - 4

Plaintiff's "symptoms are temporally related to work and are not present when he works elsewhere." *Id.*

Between September 2015 and November 2016, Plaintiff was treated extensively for stress and depression. On January 13, 2016, Dr. Ruby Farooqi diagnosed Plaintiff with major depressive disorder, single episode, without psychotic features and agreed that Plaintiff should take some time off from work. AR 0820–21. Plaintiff attended a follow-up appointment with Dr. Farooqi on January 21, 2016 to discuss his depression and to obtain Family and Medical Leave Act ("FMLA") paperwork. AR 0823. On February 25, 2016, Plaintiff reported that he was still very depressed despite being on leave from work. AR 0826. On April 26, 2016, Plaintiff reported that he was ready to return to work, but would benefit from reduced hours and scheduled breaks. AR 0844. On June 16, 2016, Plaintiff reported that his depression was well controlled and that "he is able to work without any problems." AR 0848. He requested that Dr. Farooqi write him a letter so he could obtain a pilot's license. *Id.*

In November 2016, Plaintiff reported that he developed a headache after sitting next to someone who was wearing perfume. AR 0851. An MRI was ordered which returned normal findings. AR 0857. Then, on December 6, 2016, Plaintiff consulted with Dr. David Buscher at the Northwest Center for Environmental Medicine. AR 0246. Dr. Buscher's initial assessment was that:

> [Plaintiff] most likely became sensitized after exposures to mold and mycotoxins while working in the building in Woodinville. After that he became sensitive to various cleaning agents, fragrances, poor air quality, etc. He has a combination of neural sensitization and neural inflammation. His

>condition has been getting worse and his sensitivities have been spreading to more chemicals as he becomes more and more disabled.

AR 0248.  Plaintiff saw Dr. Buscher again on January 19, 2017, and reported that he was doing about the same overall.  AR 0244.

On May 6, 2017, Plaintiff went to the emergency room due to lightheadedness, nausea, and photophobia.  AR 0401.  Plaintiff reported that "his symptoms seem to occur when he was in the office."  *Id.*  After examination, the physician noted that "this is an environmental issue and [Plaintiff] may need to be employed in a different environment." AR 0403.  The physician also noted that Plaintiff's symptoms were "suggestive of sick building syndrome."  AR 0404.

On May 10, 2017,  Plaintiff emailed Dr. Buscher to inform him that he collapsed at work on May 6, 2017, and was taken to the emergency room.  AR 0715.  He reported that his attorney advised him to seek FMLA leave.  *Id.*  Dr. Buscher assessed Plaintiff with multiple chemical sensitivity ("MCS").  AR 0237.  Dr. Buscher noted that the "only consistent effective treatment for [Plaintiff's] condition is avoidance of the chemical irritants and mycotoxins that trigger his symptoms."  *Id.*  On May 17, 2017, Dr. Buscher recommend that Plaintiff take a medical leave of absence from work for about three months.  AR 0236.  On July 24, 2017, Dr. Buscher noted that Plaintiff took some time off work to visit Colorado and other places.  AR 0235.  He noted that "[Plaintiff] is convinced he won't be able to continue to work in the urgent care clinics for [UW] because everyone in the clinics he has been assigned to have been too toxic for him."  *Id.*

ORDER - 6

On August 9, 2017, Plaintiff reported that he was feeling well for about three months and "feels totally normal." AR 0867. Plaintiff reported that he had not been at work during that time. *Id.* Plaintiff emailed Dr. Buscher on September 1, 2017, stating "I am healthy enough to work" and that he was "applying for new jobs." AR 0703. On November 16, 2017, Dr. Buscher noted that Plaintiff "does okay as long as he avoids contact with chemical irritants such as fragrances, diesel exhaust and airplane fumes," and that "[Plaintiff] has become more sensitive to chemicals including urban air pollution, which he should consider when deciding where he will return to medical practice." AR 0234. The same day, Plaintiff requested an extension of his FMLA leave through May 9, 2018. AR 0701.

On May 3, 2018, Dr. Buscher noted that Plaintiff's condition had not improved. AR 0233. Plaintiff tried working in the Caribbean but was exposed to mold in the hospital.[1] *Id.* Plaintiff also took a two-week vacation to rural South America.[2] *Id.* Plaintiff reported that the air quality was great and that he felt better every day he was there, however, he reported a negative reaction to fragrances on the flight home. *Id.* On March 23, 2019, Plaintiff submitted a sworn declaration stating that in April 2018, he attempted to work at the Veterans Affairs ("VA") center in Seattle and "[he] generally did okay." AR 0626.

---

[1] Plaintiff worked multiple shifts at an emergency hospital in October and December 2017 for a few weeks on each occasion. AR 0327.

[2] Dr. Buscher's record is incorrect. Plaintiff visited South America, not Africa, in March 2018. AR 0327.

ORDER - 7

On July 31, 2018, Plaintiff informed Dr. Buscher that he was only able to work a few days in the past month and applied for disability.  AR 0682.  Dr. Buscher noted that as of July 31, 2018, Plaintiff is "totally medically disabled at this time and cannot go back to work."  *Id.*  On September 13, 2018, Dr. Buscher noted that Plaintiff's condition continued to worsen.  AR 0681.  Dr. Buscher assessed that "[Plaintiff] would likely be able to work full-time in his profession if he could have a consistently safe environment, free of fragrances, cleaning agents, mycotoxins, pesticides, etc."  *Id.*  On November 1, 2018, Dr. Buscher noted that Plaintiff felt better after spending some time in Colorado, and Plaintiff reported that he had been working at the VA center in Seattle for several days.  AR 0680.

### 2. Plaintiff's LTD Claim

On May 8, 2018, Plaintiff submitted his disability claim to Defendant.  AR 0042.  Under Plaintiff's LTD plan, an employee is considered "disabled" when due to "sickness or injury:"  (1) he is "unable to perform the material and substantial duties of [his] regular occupation," or (2) he has a "20% or more loss in [his] indexed monthly earnings while working in [his] regular occupation."  AR 0137.  "Sickness" means "an illness or disease."  AR 0156.  "Injury" means "a bodily injury that is the direct result of an accident and not related to any other cause."  AR 0153.  "Material and substantial duties" are defined as duties that "are normally required for the performance of [the employee's] regular occupation" and "cannot be omitted or modified."  AR 0154.  The plan provides that:

> For physicians, "regular occupation" means your specialty in the practice of medicine which you are routinely performing when your disability begins. [The Defendant] will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

AR 0155.  To receive benefits under the plan, an employee must be continuously disabled throughout a 90-day elimination period.  AR 0138.  Plaintiff stopped working on May 6, 2017, meaning that his elimination period started on May 6, 2017 and ended on August 4, 2017.  AR 0044 & 0490.

During its review of Plaintiff's claim, Defendant interviewed Plaintiff on August 3, 2018.  AR 0324.  Plaintiff explained that he applied to work at the VA in the summer of 2017 and was approved to begin work after his credentials were approved in April 2018.  AR 0325.  Plaintiff stated that he was able to work at the VA because it is ventilated differently, but that he still gets sick and is working at only 20% capacity.  *Id.*

Defendant obtained four medical reviews of Plaintiff's records.  First, Melissa Gagnon, RN, reported that it is clinically unclear what is preventing Plaintiff from performing his occupational demands.  AR 0337.  Second, Dr. Andrea Brown concluded that Plaintiff's travel and work at the VA do not support that Plaintiff is precluded from being exposed to cleaners or irritants.  AR 0417.  To obtain additional information, Dr. Brown sent Dr. Buscher a list of questions concerning Plaintiff's condition. AR 0699–771.  On September 14, 2018, Dr. Buscher submitted a letter addressing Dr. Brown's questions.  AR 0667–68.  In response to Dr. Brown's question regarding whether Plaintiff could perform his occupational demands with a different employer, or in an environment without exposure to chemical irritants, Dr. Buscher explained:

ORDER - 9

> In my opinion, [Plaintiff] would be able to perform and be fully effective as a physician in a different environment without exposures to cleaning agents, fragrances, chemical irritants, sanitizers, etc. The prospects of finding such an environment is not likely, but not impossible.

AR 0668. On September 20, 2018, Dr. Buscher submitted a second letter, which is identical to the first letter except for the following last paragraph:

> A chemical free environment would be very helpful, but there are other factors to consider, [Plaintiff] has also developed a baseline deficit from the repeated exposures, which is likely permanent. He has become overly sensitive to excessive noise and strong lighting, which can overwhelm him and cause cognitive difficulties.

AR 0665–66.

Next, Dr. Stewart Russell reviewed Plaintiff's file. AR 0464–68. Dr. Russell explained that "MCS is not recognized as an illness by many medical groups. There are no reliable tests that support this diagnosis and there are no proven treatments." AR 0467. Dr. Russell concluded that Plaintiff did not lack the capacity to perform his occupational demands. *Id.* Dr. John Coughlin reviewed Plaintiff's file, and similarly concluded that the available documentation did not support Plaintiff's alleged lack of functional capacity. AR 0473–77. Finally, Defendant obtained a vocational analysis of Plaintiff's claim. AR 0428–29. A certified rehabilitation counselor examined the Bureau of Labor Statistics' Occupational Outlook Handbook ("OOH"), *see* AR 0428, and Plaintiff's position description from UW, *see* AR 0063–66. The counselor concluded that "[w]ork environment is not material and substantial to the duties performed of [Plaintiff's] occupation." AR 0428.

ORDER - 10

On September 28, 2018, Defendant denied Plaintiff's claim for LTD benefits. AR 0489–94.  Plaintiff appealed Defendant's decision on March 27, 2019.  AR 0597–621.  In response, Defendant obtained additional medical and vocational reviews, with all providers concluding that Plaintiff's records did not support Plaintiff's claim that he lacked the capacity to perform his occupational demands.  AR 1033–34, 1086–95, & 1049–53.  Defendant also obtained additional materials from Plaintiff, *see* AR 1208–2805, and participated in a conference call with Plaintiff to discuss his claim.  AR 1199–1201.  Defendant denied Plaintiff's appeal on July 19, 2019.  AR 2819–35.

The Employee Retirement Income Security Act ("ERISA") provides that a "participant" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).  Plaintiff brings this action to recover benefits under his LTD plan.

**Discussion**

**1.   Standard of Review**

The parties have filed cross-motions for judgment under Rule 52, or in the alternative, cross-motions for summary judgment under Rule 56.  The presumptive standard of review for ERISA benefit determinations is de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Here, the parties have stipulated to a de novo standard of review.  Joint Status Report at ¶ 4.B (docket no. 7 at 2).  When a district court reviews a denial of benefits under the de novo standard of review, the claimant

ORDER - 11

bears the burden of proving that he is entitled to benefits under his plan.  *See Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010).  Further, "[w]here review is de novo, a Rule 52 motion appears to be the appropriate mechanism for resolving the dispute."  *Gallupe v. Sedgwick Claims Mgmt. Servs. Inc.*, 358 F. Supp. 3d 1183, 1190 (W.D. Wash. 2019).  "Under Rule 52, the court conducts what is essentially a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true."  *Minton v. Deloitte & Touche USA LLP Plan*, 631 F. Supp. 2d 1213, 1218 (N.D. Cal. 2009) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999)).  Accordingly, the Court will resolve the dispute under Rule 52.  This Order comprises the findings of fact and conclusions of law required by Rule 52(a).

        **2.**      **Plaintiff's Claim for LTD Benefits**

Plaintiff has not met his burden of establishing disability.  To prove disability, Plaintiff must show that he was unable to perform the material and substantial duties of his regular occupation and that he was continuously disabled throughout the 90-day elimination period from May 6, 2017 to August 4, 2017.  Under Plaintiff's plan, a physician's "regular occupation" is determined by examining the national economy.  AR 0155.  The plan does not require Plaintiff to perform his duties at a particular location or in a specific environment, such as UW's Eastside Specialty Clinic.  *See* AR 0428.  Accordingly, a physician is not disabled under the plan if he is capable of working at a different location.

The Court *finds* that Plaintiff was able to perform the material and substantial duties of his occupation throughout the elimination period, and is capable of performing his duties today.  After three months of medical leave, Plaintiff reported that he felt "totally normal" on August 9, 2017.  AR 0867.  At some point during the summer of 2017, Plaintiff applied to work at the VA center.  AR 0325.  On July 24, 2017, during the elimination period, Dr. Buscher noted that Plaintiff was applying to work at the VA center and that he had spent "some time [at the VA] and the air quality was okay."  AR 0235.  Additionally, on September 1, 2017, Plaintiff requested a letter from Dr. Buscher stating, "I am healthy enough to work."  AR 0703.  In October and December 2017, Plaintiff travelled to the Caribbean to work at an emergency hospital for a number of weeks, generally without incident.  AR 0327 & 0626.

Plaintiff's own physician, Dr. Buscher, has repeatedly stated that Plaintiff is capable of practicing medicine so long as he avoids exposure to chemical irritants.  In November 2017, Dr. Buscher noted that Plaintiff "does okay as long as he avoids contact with chemical irritants such as fragrances, diesel exhaust and airplane fumes."  AR 0234.  Dr. Buscher repeated this belief in his September 2018 letter to Defendant, writing that Plaintiff "would be able to perform and be fully effective as a physician in a different environment without exposures to cleaning agents, fragrances, chemical irritants, sanitizers, etc."  AR 0668.  On November 1, 2018, Dr. Buscher certified that Plaintiff could return to work with "modified duty."  AR 0694.

Plaintiff has not demonstrated that he is incapable of performing the material and substantial duties of his regular occupation.  Despite Plaintiff's claims that he is unable to

ORDER - 13

work,[3] the record is clear that Plaintiff can practice medicine so long as he limits his exposure to chemical irritants. For example, Plaintiff found that the emergency room at the VA center was "well ventilated," and he "generally did okay" in that environment, including working night shifts to limit his exposure to perfumes and other scents. AR 0626–27. At the very least, Plaintiff has demonstrated, and the Court also *finds*, that he is capable of performing his duties on a part-time basis, such as his work at the VA center from April to December 2018.[4] *See* AR 0627.

Plaintiff has not established by a preponderance of the evidence that he is disabled as defined by his plan. Therefore, Plaintiff's motion for judgment under Rule 52, docket no. 16, is DENIED and Defendant's motion, docket no. 24, is GRANTED.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff's motion for judgment under Rule 52, docket no. 16, is DENIED. Plaintiff was not disabled within the meaning of his plan and is not entitled to receive LTD benefits.

---

[3] When conducting a de novo review under Rule 52, the Court is permitted to evaluate credibility. *See Kearney*, 175 F.3d at 1094–95. Defendant challenges Plaintiff's credibility and argues that the Court should assign little weight to Plaintiff's self-reported symptoms due to a lack of objective testing and multiple inconsistencies in the record. However, the Court makes no finding concerning Plaintiff's credibility because Plaintiff's own self-reported symptoms and actions do not support that he is disabled under the terms of his plan.

[4] Plaintiff's plan provides that Defendant will cease benefit payments when an employee is able to work in his regular occupation on a part-time basis and does not. AR 0144. "Part-time" is defined as the ability to work and earn between 20% and 80% of an employee's indexed monthly earnings. AR 0154.

ORDER - 14

(2)    Defendant's motion for judgment under Rule 52, docket no. 24, is GRANTED, and this matter is DISMISSED with prejudice.

(3)    The Clerk is DIRECTED to enter Judgment consistent with this Order and send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 2nd day of February, 2022.

_____
Thomas S. Zilly
United States District Judge

ORDER - 15